UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DUT,

                Petitioner,            CASE NO. 19-10994
                                                HON. DENISE PAGE HOOD

V.

(ACTING) DIRECTOR OF BUREAU OF
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                Respondent.
_____/

## ORDER DENYING PLAINTIFF'S PETITION FOR WRIT OF HABEAS CORPUS [#1]

### I. BACKGROUND

On April 4, 2019, Petitioner James Dut ("Dut") filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc # 1) On April 12, 2019, the Court issued an Order Directing Service and Response and staying the removal of Dut. (Doc # 2) On April 18, 2019, the Court entered a Stipulated Order vacating the stay of removal. (Doc # 4) On April 23, 2019, the Government filed a Response. (Doc # 5) The Court held a hearing on April 30, 2019.

Dut is a native of South Sudan. (Doc # 1, Pg ID 6) Dut entered the United States as part of a "Lost Boys of Sudan" resettlement program in 2001 and was subsequently granted permanent resident status on June 6, 2006. (*Id.*) Between June

1

1, 2016 and April 26, 2017, Dut committed approximately 15 misdemeanor offenses and one felony offense. (*Id.*) Dut committed the felony offense on April 26, 2017, and it involved an alleged first-degree home invasion in violation of MCL 750.110a(2). (*Id.*) Dut pled nolo contendre to this felony on October 9, 2017 and was sentenced to one year in prison with credit for time served. (*Id.*)

Following Dut's criminal sentence, he was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody and deportation proceedings subsequently commenced. (*Id.* at 6-7.) Dut was ordered removed on September 7, 2018. (*Id.* at 7.) He chose not to appeal his removal, and the time to do so has passed. (*Id.*) Dut has been in ICE custody for over eleven months pending his removal to South Sudan.

According to a declaration of Jason Zywica ("Zywica"), ICE Deportation Officer,

> The United States has a repatriation agreement with South Sudan and South Sudan has cooperated in the issuance of travel documents for the removal of its citizens. . . . [Zywica] completed a request for a travel document to remove Dut to South Sudan on October 29, 2018 and forwarded it on October 30th. . . .With recent South Sudanese cases, travel documents have been successfully issued following a case review and interview by South Sudanese consular officials. . . . If the alien cooperates in the interview, a travel document is typically issued three to four weeks after the interview. ICE was unable to get a confirmed appointment to present the request to the South Sudan Embassy until March 22, 2019. There is no indication that the South Sudan Embassy will not issue a travel document for Dut. Dut is scheduled for an interview with consular officials from the South Sudan Embassy on April 24, 2019.

> A 90-day Post Order Custody Review (POCR) was completed and a letter was signed on January 4, 2019, continuing Dut's detention because ICE expects his removal to occur in the near future and because of his criminal history. A 180-day POCR was completed on April 8, 2019, and a decision regarding continued detention is forthcoming. Based on [Zywica's] experience in removing aliens to South Sudan, [he believes] Dut's removal is significantly likely to occur in the reasonably foreseeable future.

(Doc # 5-1, Pg ID 39-40)

## II. ANALYSIS

Dut seeks release from ICE custody under supervision via the instant Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2241. He argues that his detention is unconstitutional because it has been indefinitely extended beyond the detention period authorized by 8 U.S.C. § 1231(a)(6) of the Immigration and Nationality Act.

Federal courts have jurisdiction to consider challenges to the lawfulness of immigration-related detention in habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). A district court has the power to grant a writ of habeas corpus in accordance with 28 U.S.C. § 2241, which provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless-- (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof . . . .

28 U.S.C. § 2241.

Congress has directed that after entry of a final order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* at § 1231(a)(2). Congress has further authorized the Attorney General to detain the alien beyond the 90-day removal period under certain circumstances:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

Detention of an alien, however, may not be indefinite. *Zadvydas*, 533 U.S. at 688. If removal of the alien is not reasonably foreseeable, then continued detention of the alien is unreasonable and not authorized by the statute. *Id.* at 699-700. Detention for a period of up to six months is considered presumptively reasonable. *Id.* at 701. As the Supreme Court has explained,

> [a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every

4

> alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

> Courts have found no significant likelihood of removal in five types of cases: (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed v. Brott*, No. CIV. 14-5000, 2015 WL 1542131, at *4 (D. Minn. Mar. 17, 2015), *report and recommendation adopted*, No. CIV. 14-5000, 2015 WL 1542155 (D. Minn. Apr. 7, 2015) (collecting cases).

In *Demore v. Kim*, the Supreme Court held that the detention without bail of removable criminal aliens pending their removal proceedings was constitutionally permissible. 538 U.S. 510, 531 (2003). In so holding, the court distinguished *Zadvydas* in two respects. *Id.* at 527. The court noted that removal was no longer practically attainable for the aliens in *Zadvydas* who were detained following final orders of removal, which is not the case with detention pending removal proceedings. *Id.* The court also noted that, while the period of detention at issue in *Zadvydas* was indefinite and potentially permanent, the detention in *Demore* was of a much shorter duration pending removal proceedings with a typical calendar (in

5

most cases a month and a half to five months where the alien chooses to appeal). *Id.* at 528-29. The respondent in *Demore* had been in custody for six months, longer than average, "but respondent himself had requested a continuance of his removal hearing." *Id.* at 530-31.

In *Mulla v. Adducci*, the petitioner had been in custody for nearly a year following his final order of removal. 178 F. Supp. 3d 573, 577 (E.D. Mich. 2016). Pakistan had issued a travel document for him, and ICE had scheduled his removal months earlier. However, on the day of the scheduled removal, the petitioner filed a motion to reopen his removal proceedings and a motion to stay removal. *Id.* at 575. The petitioner was at the airport when ICE received word that the BIA had granted the motion to stay; he would have been removed that day if not for the stay. *Id.* The court found that the length of the petitioner's detention did not reflect complications that ICE encountered effecting his removal. Rather, much of the delay was attributable to the petitioner's own efforts at pursuing remedies to forestall or reverse the order of removal. *Id.* at 577. The court concluded that, while the petitioner was entitled to follow that course, his efforts to employ that delay to establish that his detention was indefinite were unconvincing. *Id.* The court denied his petition for writ of habeas corpus without prejudice, noting that the petitioner was likely to receive another travel order from Pakistan within the next couple of months. *Id.*

In this case, it is undisputed that Dut has been detained under 8 U.S.C. § 1231(a)(6) since September 7, 2018, which is longer than the six-month presumptively reasonable period under *Zadvydas*. Dut argues that ICE has not provided any particularized evidence that demonstrates that there is a significant likelihood that he will be removed in the reasonably foreseeable future. The Government responds by contending that the United States has a repatriation agreement with the South Sudan, and South Sudanese aliens have been subject to final removal orders from the United States in recent years. Further, the Government asserts that the proper documents have been submitted to consular authorities to obtain a travel document for Dut, and he is likely to be removed soon after his interview with South Sudanese consular officials.

On May 7, 2019, the Government submitted a Supplemental Declaration of Zywica. (Doc # 6) Zywica indicated by way of a chart the times between various aliens' interviews, the issuance of their travel documents, and the time thereafter that it took for their removal. (*Id.*) The times elapsed between the aliens' interviews and obtaining a travel document were no more than forty days. (*Id.*) Dut was issued a travel document on August 7, 2019, and on August 8, 2019, the travel document was sent to Dut's counsel. (Doc # 11)

The Court finds that Dut has not shown that there is no significant likelihood that he will be removed in the reasonably foreseeable future. The Government has provided the Court with documentary evidence indicating that ICE is in the process of removing Dut, and his removal will likely take place in the coming weeks. The Court is satisfied that it is likely that Dut will be removed in the near future and therefore denies Dut's Petition for a Writ of Habeas Corpus.

If Dut is not removed in the coming months, he may at some point be able to make a showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. For now, however, the Court denies Dut's Petition for Writ of Habeas Corpus.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Petitioner James Dut's Petition for a Writ of Habeas Corpus (Doc # 1) is **DENIED**.

IT IS FURTHER ORDERED that this action is **DISMISSED WITHOUT PREJUDICE**.

                                                s/Denise Page Hood
                                                United States District Court Judge

DATED: August 19, 2019